Michael J. McCue (NV Bar No. 6055)
MMcCue@LRRLaw.com
Jonathan W. Fountain (NV Bar No. 10351)
JFountain@LRRLaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169-5996
Tel: (702) 949-8200
Fax: (702) 949-8398

*Attorneys for Plaintiff*
*Rock Vault Tours, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ROCK VAULT TOURS, INC., a Delaware corporation;<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>JOHN PAYNE, an individual,<br><br>　　　　　　Defendant. | Case No. 2:15-cv-01863-JCM-GWF<br><br>**OPPOSITION TO DEFENDANT JOHN PAYNE'S MOTION TO DISMISS FOR LACK OF STANDING AND PURSUANT TO FRCP 12(B)(6), OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Rock Vault Tours, Inc. ("Rock Vault" or "Plaintiff") hereby opposes the Motion To Dismiss For Lack Of Standing And Pursuant To FRCP 12(B)(6), Or In The Alternative Motion For Summary Judgment (hereinafter "Mot. to Dismiss") filed by Defendant John Payne ("Payne" or "Defendant"). This opposition is supported by the Declaration of Jonathan W. Fountain, the memorandum of points and authorities set forth below, and any oral argument the Court may entertain.

## PRELIMINARY STATEMENT

Payne's motion jumps the gun. The gravamen of this lawsuit is that Payne, in contravention of copyright law ███████████████ has created a new rock 'n' roll stage show that is similar to Rock Vault's popular Raiding the Rock Vault show, which is currently being performed at the Tropicana Las Vegas.

-1-

Payne's principal argument is that his new show, The Rock Pack, and Raiding the Rock Vault are not similar.  But Payne did not submit anything to allow the Court to analyze the shows' similarities or differences. For instance, Payne did not submit any scripts or video recording of the shows.  Moreover, Rock Vault has no way of verifying or rebutting Payne's description of The Rock Pack show without discovery. Indeed, Payne claims his show has not yet been publically performed.  Thus, the only person with access to the information Rock Vault needs to rebut Payne's claims that the two shows are dissimilar is Payne.  Accordingly, summary judgment is premature at this very early stage of the case.

As for Rock Vault's false designation of origin claim, Payne's argument that the advertisement is mere puffery misconstrues the Complaint.  Payne's argument that Rock Vault cannot make out a *prima facie* case is unsupported by admissible evidence.



Payne's motion to dismiss Rock Vault's fraud claim should also be denied. The Complaint specifically alleges Payne's false statements and explains why they are false.

For these reasons, and as set forth more fully below, Payne's motion  should be denied without prejudice until after the completion of discovery.

### ROCK VAULT'S RESPONSES TO PAYNE'S "UNDISPUTED" FACTS

1.     Raiding the Rock Vault is advertised as "transporting the audience back to a magical musical journey from 1960 to 1990, with classic anthems from the Rolling Stones, The Who, The Doors, Led Zeppelin, Jimi Hendrix, The Eagles, Queen, AC/DC, Deep Purple, Van Halen, Journey, Heart, Free, Aerosmith, and more. . . ." (*See* http://www.raidingtherockvault.com)

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

6880916_1

(last visited October 24, 2015).

**RESPONSE**: Undisputed but incomplete. First, the correct website link is http://www.raidingtherockvault.com/the-show/. Second, the quote incorrectly says "transporting" instead of "transports." Third, the description is an advertisement. It does not constitute the entire copyrighted work and Rock Vault disputes any claims that the advertisement constitutes the entire copyrighted work "Raiding the Rock Vault."

2. Further, Raiding the Rock Vault "features a stunning light show, video screens, actors, dancers and high quality BOSE® concert sound production in the famous showroom at the Tropicana Las Vegas." (*Id.*).

**RESPONSE**: *See* previous response.

3. On July 1, 2014, following a dispute between Payne on the one hand, and Rock Vault Tours, Inc., NAV-LVH, LLC, Westgate Las Vegas Resort, LLC and Harry Cowell (collectively, the "Rock Vault Parties") on the other hand, Payne filed suit against the Rock Vault Parties in the Eighth Judicial District of the State of Nevada. Payne alleged, among other claims, copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, defamation, and/or slander, and violation of the right of publicity. *See* Payne Declaration at Paragraph 6.

**RESPONSE**: Undisputed.

**RESPONSE**: Undisputed.

6880916_1

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

**RESPONSE**:  Undisputed.

6880916_1

███ ███████████████████████████████████████████████

████████████████████████████████████████████████ Payne

created the rock music show "The Rock Pack." *See* Payne Declaration at Paragraph 9.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ The Rock Pack

show is advertised as bringing "LAS VEGAS DIRECTLY TO YOU." (Fountain Decl. ¶ 8.) Advertisements for the show specifically mention that the show is the brainchild of Payne and specifically reference that Payne co-created Raiding the Rock Vault, a show which has, to date, only been performed in Las Vegas. These statements by Payne suggest that The Rock Pack show is somehow connected to the Raiding the Rock Vault show. For example, consumers could infer that The Rock Pack is a spin-off of Raiding the Rock Vault, which Payne is now bringing on the road. In addition, the Rock Pack show is advertised as a show about the history of classic rock bands, as told through visuals, band members, and music performed by the original artists.

10.    The Rock Pack is an unscripted show featuring original artists from six bands (Asia, Kansas, Cheap Trick, The Tubes, Starship and Toto) who discuss their careers with Payne in between songs. *See* Payne Declaration at Paragraph 9.

**RESPONSE**: Disputed. Payne did not submit a script or any video from The Rock Pack show that would permit an evaluation of the show or a comparison of the parties' competing shows.

11.    The Rock Pack showcases songs only from the 1980s and the songs are played in no particular order. *See* Payne Declaration at Paragraph 10.

**RESPONSE**: Disputed. Payne did not submit a script or any video from The Rock Pack show that would permit an evaluation of the show or a comparison of the parties' competing shows.

12.    Further, The Rock Pack contains no acting, dancing, or script unlike Raiding the Rock Vault. See Payne Declaration at Paragraph 11.

**RESPONSE**: Disputed. Payne did not submit a script or any video from The Rock Pack

-5-

6880916_1

1   show that would permit an evaluation of the show or a comparison of the parties' competing

2   shows.

3       13.     Upon receiving a letter from counsel for the Rock Vault, Payne removed any

4   reference to "winning THE BEST OF VEGAS MUSICAL two years in a row," which occurred

5   prior [to] the filing of the complaint in this matter. *See* Payne Declaration at Paragraph 13.

6       **RESPONSE**:   Disputed-in-Part. Payne did remove the text from the advertisement

7   appearing on the website link http://kdimentertainment.com/icons-of-rock/. *See* Fountain Decl. ¶

8   12. However, another advertisement using the same language continues to be used by Payne.   *Id.*

9   & Ex. C.  Rock Vault does not know whether Payne used the same advertisement in additional,

10  other media (*e.g.*, print, video, television, other websites etc.). This information is solely within

11  Payne's possession. Rock Vault intends to explore this topic through discovery. *See* Fountain Decl.

12  ¶ 13.

13      14.     At the time the statement was up and to this date, The Rock Pack show has not

14  taken place in Las Vegas and The Rock Pack has not been advertised as performing any upcoming

15  shows in Las Vegas. *See* Payne Declaration at Paragraph 14.

16      **RESPONSE**:   Undisputed, assuming Payne is referring only to the statement on the

17  website. However, as indicated above, Payne is still using the advertisement on other places of the

18  website and Rock Vault does not know whether there are additional, other mediums where the

19  same advertisement appears. This information is solely within Payne's possession. Rock Vault

20  intends to explore this topic through discovery. *See* Fountain Decl. ¶ 13.

21      15.     To date, the only scheduled event for The Rock Pack is set for the Germain Arena

22  on November 19, 2015 in Estero, Florida. *See* Payne Declaration at Paragraph 15.

23      **RESPONSE**:   Unknown. Rock Vault has no information as to whether Payne has

24  scheduled other events in other places. This information is solely within Payne's possession. Rock

25  Vault intends to explore this topic through discovery. *See* Fountain Decl. ¶ 14.

26      16.     Tickets for the event went on sale on September 13, 2015, only one day before the

27  alleged false statement was removed by Payne. *See* Payne Declaration at Paragraph 16; *see also*

28  https://www.facebook.com/The-Rock-Pack-399481013580564/ (postdated September 13, 2015)

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

-6-

(last visited October 24, 2015).

**RESPONSE**:  Unknown. Rock Vault has no information as to when Payne began selling tickets to The Rock Pack show. While the Facebook page seems to indicate that the tickets were on sale on September 13, 2015, it also contains an entry on September 3, 2015. Regardless, information concerning when Payne began selling tickets is information that is solely in Payne's possession. Rock Vault intends to explore this topic through discovery. *See* Fountain Decl. ¶ 15.

## **COUNTER-STATEMENT OF FACTS**

This is an action for copyright infringement and other causes of action arising out of Payne's creation of a competing rock 'n' roll show that is substantially similar to Rock Vault's popular "Raiding the Rock Vault" show.  Fountain Decl. ¶ 2.

Rock Vault produces and runs the highly popular and award winning stage show called "Raiding the Rock Vault," which is currently being performed at The New Tropicana Las Vegas in Las Vegas, Nevada. Fountain Decl. ¶ 3. Voted Best Musical in Las Vegas by the Las Vegas Review Journal readers' poll two years in a row, the Raiding the Rock Vault show is the story of classic rock, performed by members of some of the greatest rock bands in history, featuring anthems from: The Rolling Stones, The Who, The Doors, Led Zeppelin, and other iconic rock bands. *Id*. ¶ 3 & Ex. A. The show features music from the 1960s to the 1990s and is advertised as "a history of rock 'n' roll [that] will come to life in this one-of-a-kind, rock concert experience at the Tropicana Las Vegas." *Id.*

Rock Vault owns U.S. copyright registrations for the show's format and script (U.S. Reg. No. Pau003661723 and U.S. Reg. No. Pau003661716) (the "Copyrights").  Fountain Decl. ¶ 5.

Payne was a former cast member of the Raiding the Rock Vault show.  Fountain Decl. ¶ 6.

In September 2015, Rock Vault learned that Payne had created a new show called The Rock Pack. Fountain Decl. ¶ 7. The Rock Pack show promises to bring "LAS VEGAS DIRECTLY TO YOU." *Id.* ¶ 8. Based on show's websites located at http://kdimentertainment.com and http://www.theclassicrockseries.com, its Facebook page located at https://www.facebook.com/ClassicRockSeries, and its Twitter feed located at https://twitter.com/ClassicRockSeries, The Rock Pack show appears to be a traveling show

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

-7-

planned to be performed throughout the United States beginning on November 19, 2015 in Fort Meyers, Florida. *Id.* ¶ 9. According to these websites, the show is the "brainchild" of Payne and tells a story of classic rock history, featuring songs sung by members from classic rock bands such as Asia, Toto, Kansas, Starship, Cheap Trick, and the Tubes coupled with stories from former band members. *Id.*

The websites further describe The Rock Pack show as a story of classic rock history, featuring songs sung by members from classic rock bands:

> Ringmaster Payne extracts interesting facts and road stories from the cast of classic rock artists as well as pertinent visuals on huge screens. Throughout the show he sings the ASIA classics Heat Of The Moment, Only Time Will Tell, Sole Survivor and Time Again. Prepare yourself for an unprecedented evening of superlative music, enthralling stories, facts, and visuals.

(*See* http://kdimentertainment.com/icons-of-rock/) (last visited Sept. 9, 2015). (Fountain Decl. ¶ 10.)

## **LEGAL STANDARD**

### I.    **Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### II.    **Motion for Summary Judgment**

-8-

6880916_1

Summary judgment should only be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the facts, along with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## **ARGUMENT**

I.      **GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON ROCK VAULT'S COPYRIGHT CLAIM (COUNT I)**

A.      **Copyright Assignments Do Not Need To Be Recorded To Be Valid**

Exalting form over substance, Payne argues that Rock Vault lacks standing to assert its copyright infringement claim because Rock Vault did not record Payne's written assignment of copyrights in Raiding the Rock Vault with the U.S. Copyright Office. (Mot. to Dismiss at 11, ll. 5-8.) This argument fails because written copyright assignments do not have to be recorded to be valid. *See, e.g., DeSilva Const. Corp. v. Herrald*, 213 F. Supp. 184, 192 (M.D. Fla. 1962) ("Failure to record an assignment in the Copyright Office does not invalidate the document as between the parties. Neither is it available as a defense to an infringer"); *Symantec Corp. v. CD Micro, Inc.*, 286 F. Supp. 2d 1265, 1271 (D. Or. 2003) ("Failure to record the assignment of a copyright is not

-9-

LEWIS ROCA ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

available as a defense to an infringer"); Patry on Copyright § 5:144 ("Failure to record an assignment in the Copyright Office did not, however, invalidate the agreement between the parties, nor was it available as a defense to an infringer"). Payne submits no authority for the proposition that his written assignment of copyrights is somehow *invalid* because the ministerial act of recording it has not occurred. Exactly the opposite is true. The assignment is valid and Rock Vault has standing to sue.

### B.   Payne Submitted No Evidence That He Has A License

Payne next suggests that *if* he has a license from Mr. Kershenbaum, an alleged co-owner of the copyrights in Raiding the Rock Vault, then Payne cannot be an infringer. (Mot. To Dismiss at 11, ll. 9-13.) However, it is Payne who bears the burden of demonstrating the absence of a genuine issue of material fact, *Adickes*, 398 U.S. at 157, and it is also Payne who bears the burden of proving that he has been granted a license to the copyrights in Raiding the Rock Vault. "Where Defendants assert a license defense to copyright infringement, it is the Defendants' burden to prove by a preponderance of the evidence the existence of a specific license . . . ." *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10–cv–00106–LRH–PA, 2015 WL 5090791, at *3 (D. Nev. Aug. 26, 2015); *see also Merit Homes, LLC v. Joseph Carl Homes, LLC*, No. CV–10–2030–PHX–SMM, 2012 WL 1038769, at *4 (D. Ariz. Mar. 28, 2012) ("If the copyright infringement dispute turns on whether there is a license, the burden is on the alleged infringer to prove the existence of the license").

Here, Payne has failed to submit any evidence that he has a license from Mr. Kershenbaum or any evidence defining what the scope of that license might be.   For instance, Payne's declaration contains no statement that he has a license from Mr. Kershenbaum, and Payne's motion  does nothing more than pose the question: "has Mr. Kershenbaum, as a co-owner of the Copyrights, granted Payne permission if required[?]" (Mot. to Dismiss at 11, ll. 11:12.)  Rather than showing the absence of a genuine issue of material fact, Payne's motion demonstrates that a genuine issue of fact exists with respect to the existence and scope of the alleged license. Accordingly, summary judgment should be denied. *See Corbello v. DeVito*, 777 F.3d 1058, 1067

-10-

(9th Cir. 2015) (reversing trial court's grant of summary judgment and finding genuine issue of material fact existed as to whether copyright holder granted a license); *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012) (holding genuine issue of material fact regarding whether copyright owner provided defendant with license to create derivative work precluded summary judgment); *Allman v. Capricorn Records*, 42 F. App'x 82, 83 (9th Cir. 2002) ("In this case, there are genuine issues of material fact as to whether the licenses were limited in scope and whether the licensee acted outside the scope of the license").

### C.    Substantial Similarity Cannot Be Determined On This Record

Payne next argues that the parties' competing shows, The Rock Pack, on the one hand, and Raiding the Rock Vault, on the other hand, are not substantially similar and, therefore, there can be no copyright infringement.  (Mot. to Dismiss at 11, ln. 14 to 13, ln. 18.)  However, Payne has failed to submit copies of the works for analysis, rendering summary judgment premature and inappropriate.

Copyright infringement is proven by evidence showing that: (1) the defendant had access to the copyrighted work; and (2) that the copyrighted work and the accused work are substantially similar.  *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).  To establish substantial similarity, a plaintiff must satisfy both an extrinsic test, which focused on the works' objectively copyrightable elements, and an intrinsic test, which focused on an ordinary person's subjective impression of the works, sometimes called the "ordinary observer" test.  *Id.* at 1077.  Under the extrinsic test, dramatic and literary works are evaluated for "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events . . . ."  *Id.* (citation omitted).  "The extrinsic test often requires analytical dissection of a work and expert testimony."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).[1]  "Substantial similarity is a highly fact specific inquiry."  *Identity Arts v. Best Buy Enter.*

---

[1] "[A]nalytical dissection" refers to the process of determining which elements of a copyrighted work are subject to copyright protection and the comparison of such protectable elements to elements of expression contained in the allegedly infringing work. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-76 (9th Cir. 1992) (explaining that purpose of analytic dissection is to define scope of copyright protection).

-11-

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

*Servs. Inc.*, Nos. C 05-4656 PJH, C 06-1631 PJH, 2007 WL 1149155, at *8 (N.D. Cal. Apr. 18, 2007).   Generally, "summary judgment is not highly favored on the substantial similarity issue in copyright cases." *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 528 (9th Cir. 1987); *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983) ("Since substantial similarity is usually an extremely close question of fact, summary judgment has traditionally been disfavored in copyright litigation").

To determine substantial similarity, "the court must make a detailed comparison of the allegedly infringing and infringed works. *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984); *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203, 350 (9th Cir. 1945) (noting dismissal can be granted if the copyrighted work and infringing work "are both before the court, capable of examination and comparison"). The Court cannot analyze substantial similarity if the parties' competing works are not presented to the Court for analysis. *See, e.g.*, *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) (holding accused films in copyright infringement action were not part of record, and thus court could not determine whether there were similarities between the accused films and the copyrighted works on a motion for summary judgment, stating, "Here, the court need not—indeed cannot—engage in a side-by-side comparison of the protected and accused works, since neither party has proffered the accused films as part of the record on the pending summary judgment motions").

In this case, the Court cannot make a detailed comparison of Plaintiff's Raiding the Rock Vault show and Defendant's The Rock Pack show because Payne did not submit the works for comparison. Nor did Payne submit any scripts or video recordings of the shows. *See, e.g.*, *Litchfield*, 736 F.2d at 1356 (in summary judgment analysis, appellate court read the copyrighted book, and viewed accused movie and read movie script); *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 (9th Cir. 1983) (appellate court viewed the two movies at issue to conclude that summary judgment should be denied); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) (defendant attached cassette of copyrighted song and allegedly infringing score with summary judgment motion, which trial and appellate courts listened to).

Instead of submitting the works for comparison, Payne submitted his biased declaration,

-12-

containing nothing more than his personal ***description*** of The Rock Pack show.  For Plaintiff's Raiding the Rock Vault show, Payne submitted an ***advertisement*** from Rock Vault's website. Payne then compares these materials and concludes that the parties' *shows* are not substantially similar.  But personal descriptions and advertisements are not the works that must be compared to determine substantial similarity. Payne's argument is akin to asking the Court to analyze whether two movies are substantially similar by looking only at their trailers, or to analyze whether two books are substantially similar by looking only at their dust jackets. Summary judgment should be denied because Payne has failed to submit the parties' competing works for analysis.

### D.       Discovery Is Needed To Determine Substantial Similarity

As noted above, Payne has not submitted the works at issue to permit a substantial similarity analysis. Payne may try to cure this problem on his reply by submitting copies of the script or video of Raiding the Rock Vault and The Rock Pack.  Of course, any such evidence must be excluded.  *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1098 (D. Nev. 2013) ("Because Smith improperly introduced new evidence in a reply, the Court declines to review this evidence"). Regardless, even if such evidence is considered, summary judgment would not be appropriate because Rock Vault has not had an opportunity to obtain any discovery or review any materials regarding Payne's new show.   As Payne admits, his show premiers November 19, 2015.  (Payne Decl. ¶ 15.)  As Rock Vault has not seen the show, it is entitled to conduct discovery to confirm or rebut Payne's description of the show. For instance, Rock Vault needs discovery concerning: (1) the facts surrounding the creation of the show, (2) whether any scripts or rehearsal videos exist, (3) whether the show's content has changed during production, (4) documents regarding Plaintiff's Raiding the Rock Vault show, (5) documents discussing how to differentiate the parties' shows, and (6) any advertisements for The Rock Pack show that mention or reference the Raiding the Rock Vault show.  Fountain Decl. ¶ 11.

### E.       The Works Are Likely To Be Found Substantially Similar

As set forth above, the Court cannot determine substantial similarity by looking at descriptions of the works and advertisements; the Court must compare the actual works themselves.  However, even if the Court only looked at Payne's description of the Rock Pack show

-13-

and the advertisement for Raiding the Rock Vault, there are obvious similarities that demonstrate the existence of a genuine issue of material fact concerning the question of substantial similarity. Here, Payne claims the two shows are dissimilar because the time period of the music is different, the songs from The Rock Pack are not played in chronological order, the songs in The Rock Pack are sung by the original artists, and The Rock Pack does not have a script, actors, or dancers. However, Payne ignores the fact that he advertised his show as "[BRINGING] LAS VEGAS DIRECTLY TO YOU."  Fountain Decl. ¶ 8.  He also advertised his show by claiming that he co-created Raiding the Rock Vault, which won two awards for best musical. *Id.* ¶ 12 & Ex. C. Customers are reasonably going to believe that The Rock Pack is a similar type of show. Moreover, Payne advertised his show as a rock concert stage show (like Raiding the Rock Vault), playing classic rock (like Raiding the Rock Vault), featuring members of classic rock bands (like Raiding the Rock Vault), with visuals (like Raiding the Rock Vault), and discussions of the band's careers through road stories. (Payne Decl. ¶¶ 9-11.)  In essence, The Rock Pack is advertised as a show about the history of classic rock bands, as told through visuals, band members, and music performed by the original artists. Differences like playing music only from a specific decade or that the songs in The Rock Pack show are sung by the original band members, are minor in light of the overall similarities between the works. In what is known as the "inverse ratio rule," courts "require a lower standard of proof of substantial similarity when a high degree of access is shown."  *Three Boys Music*, 212 F.3d at 485 (citations omitted).  And here, Payne admits he "undisputedly had access to the Rock Vault Parties' work."  (Mot. to Dismiss at 12, ln. 2; *see also* Payne Decl. ¶ 15.)

Viewing the evidence in the light most favorable to Rock Vault and taking into account that Payne has admitted he had access to Raiding the Rock Vault, there is undoubtedly a genuine issue of material fact concerning whether Raiding the Rock Vault and The Rock Pack are substantially similar.

## II.  GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON ROCK VAULT'S FALSE DESIGNATION OF ORIGIN CLAIM (COUNT II)

### A.  Payne Misconstrues Rock Vault's False Designation of Origin Claim

6880916_1

Payne argues that his advertisement stating that Raiding the Rock Vault was voted "THE BEST OF VEGAS MUSICAL two years in a row" is not actionable because it is mere puffery. (Mot. to Dismiss at 14, ln. 6 to 15, ln. 21.)

Payne's argument misconstrues Rock Vault's allegations. Rock Vault's false designation of origin claim does not allege that the statement that Rock Vault won THE BEST OF VEGAS MUSICAL two years in a row is false. Rather, Rock Vault's claim is based upon Payne's false statement that *he* was responsible for winning the awards *two* years in a row when, in fact, he was not substantially involved in Raiding the Rock Vault the second time it won the award. The Complaint alleges the following:

> The statement that Payne won an award for "THE BEST OF VEGAS MUSICAL two years in a row" is false. The Show was revised by Rock Vault after Payne ceased to be affiliated with the Show. The award for the second year was not related to the Show as it existed when Payne was involved in it.

(Compl. ¶ 33.)

Payne's claim that he is responsible for the second award when he was not, is not an exaggerated or highly subjective form of advertising, it is a false statement of fact and, therefore, *not* puffery.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (holding puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely"); *Haskell v. Time, Inc,* 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions"). Accordingly, the alleged statement is not "mere puffery."

**B.**     **Rock Vault Has Alleged A *Prima Facie* Case**

Payne argues Rock Vault cannot "establish" a *prima facie* claim for false designation of origin. (Mot. to Dismiss at 15, ln. 22 to 17, ln. 20.) Payne supports his argument with evidence outside the pleadings, such as Facebook posts and his own declaration, and seeks summary judgment. Fed. R. Civ. P. 12(d) (if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment"). Yet, none of Payne's arguments warrants summary judgment.

First, Payne claims that he was "involved" with Raiding the Rock Vault show when the

-15-

6880916_1

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

voting for the second BEST OF LAS VEGAS award was occurring. (Mot. to Dismiss at 16, ln. 7.) While Payne's association with Rock Vault was not formally terminated until June or July 2014[2], Payne was suspended in May 2014 was not involved in the changes made to the show. (Cowell Decl. ¶¶ 4-7.) More specifically, the show was revised in the following ways:

    a.  An entirely new set has been built which no longer involves finding the Rock Vault in the Mayan jungle;

    b.  The story of the show has been changed to a roadie and a tour manager telling Rock Tales;

    c.  There is no longer a radio DJ and his sketches;

    d.  The original sketches have been removed;

    e.  The songs are no longer performed in chronological order; and

    f.  The television screens displayed during songs now include more information.

(Cowell Decl. ¶ 6.) Given that the extent of Payne's involvement and contributions to Raiding the Rock Vault are in dispute, a genuine issue of material fact exists and summary judgment is inappropriate.

Second, Payne claims the advertisement could not have deceived any segment of Rock Vault's audience.  (Mot. to Dismiss at 16:11-26.)  Specifically, Payne claims that The Rock Pack performs in Florida and Raiding the Rock Vault performs in Las Vegas.  (*Id*.)  Because the shows perform in different locations, Payne argues, they do not have the same audiences. (*Id.*)

Payne's argument completely misapplies trademark law.  Trademark law seeks to protect a trademark holder's goodwill associated with its mark and protects against those who seek to usurp that goodwill.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010).  Here, Payne claimed that his show, The Rock Pack, is connected to Raiding the Rock Vault by advertising that The Rock Pack was created by Payne, and that Payne also co-created Raiding the Rock Vault, an award winning musical in Las Vegas.  Then Payne advertised that The Rock Pack intends to bring "LAS VEGAS DIRECTLY TO YOU."  It is more

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

---

[2] Payne claims he was terminated in July 2014.  However, his prior complaint filed at Case No: 2:14-cv-1196-GMN-NJK indicated that he was terminated in June 2014.

-16-

than reasonable to infer, on summary judgment, that some Rock Pack ticket purchasers bought their tickets believing that the Rock Pack show is sponsored by, affiliated with, or connected to Rock Vault or its Raiding The Rock Vault show.  Buyer confusion "as to sponsorship, affiliation or connection" is actionable, even if the two shows are not directly in competition.  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:3 (4th ed. 2006 & Supp. 2015); *see also* Compl. ¶ 34 (alleging Payne's false statement will cause confusion as "to the affiliation, connection, or association of Payne with Rock Vault").  In fact, it would be ***unreasonable*** to believe that Payne, in mentioning Raiding the Rock Vault in his advertisements, did not intend to attract audience members of Raiding the Rock Vault to also attend his new show, The Rock Pack. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir. 1998) ("one of the primary purposes of advertising is to motivate a decision to purchase a particular product or service") (citation omitted); *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 594 (N.D. Tex. 1999) ("The Court is hard pressed to believe that a reasonable jury could conclude" that celebrity's name in advertisement was not focus of ad given "one of the primary purposes of advertising is to motivate a decision to purchase a particular product or service") (citation omitted); *F.T.C. v. Pharmtech Research, Inc.*, 576 F. Supp. 294, 301 (D.D.C. 1983) ("it is difficult to imagine that any manufacturer would sponsor an advertisement absent the purpose of influencing the purchase of its product"). Viewing the evidence in the light most favorable to Rock Vault, the advertisement at issue could deceive a segment of Rock Vault's audience.[3]

Third, Payne claims that any false statement in the advertisement was not material because it was not likely to influence purchasing decisions. (Mot. to Dismiss at 16, ln. 27 to 17, ln. 5.) Specifically, Payne argues that the statement that the Raiding the Rock Vault show won two BEST MUSICAL awards will not influence people to purchase The Rock Pack tickets because The Rock Pack is a *concert*, not a *musical*.[4]  (*Id.*)  Payne's argument fails.

---

[3] Payne also argues that he removed the advertisement promptly.  This argument is addressed *infra* regarding damages.

[4] Payne also repeats his argument that the shows are not similar.  This argument was already addressed in the copyright claim and incorporated herein.

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

Payne submits no evidence the statement will not influence people's purchasing decisions. (Mot. to Dismiss at 17, ll. 1-5.)  He submits no declarations, surveys, expert reports, or any admissible evidence of any kind showing that prospective concert goers will not be influenced by knowing that Rock Pack's alleged creator previously won two awards for a musical. Apparently, Payne wants the Court to assume, without any evidence or authority, that purchasers and potential purchasers would not be influenced.  The Court can deny summary judgment based on Payne's failure to support his argument.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . .").

In fact, the reasonable inference, based on the evidence, is the exact opposite: that Payne's reference to Raiding The Rock Vault is intended to influence potential ticket purchasers to purchase tickets for The Rock Pack. The purpose of an "advertisement" is to influence people to purchase a good or service.  *See Newcombe*, 157 F.3d at 693; *Henley*, 46 F. Supp. 2d at 594.  The advertisement in question highlighted Payne's connection to Raiding the Rock Vault and to winning two BEST OF LAS VEGAS awards for the purpose of selling tickets to the Rock Pack show.  For Payne to now claim his advertisement is unlikely to affect customer purchasing decisions is nothing short of unbelievable.  *Pharmtech Research, Inc.*, 576 F. Supp. at 301 ("it is difficult to imagine that any manufacturer would sponsor an advertisement absent the purpose of influencing the purchase of its product").  Discovery will most certainly reveal that Payne intended the advertisement to increase sales of The Rock Pack tickets. *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("If Omicron intentionally misled consumers, we would presume consumers were in fact deceived and Omicron would have the burden of demonstrating otherwise").  At this early stage of the case and viewing the evidence (or lack thereof) in the light most favorable to Rock Vault, there is most certainly a genuine issue of material fact regarding whether Payne's advertisement is or is not "likely to influence the purchasing decision" of customers.

Finally, Payne claims Rock Vault cannot establish damages because the advertisement at issue was removed just prior to the commencement of Rock Pack ticket sales.  (Mot. to Dismiss at

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

-18-

17, ll. 6-14.)  Specifically, Payne claims tickets for The Rock Pack went on sale one day before the advertisement was removed.  (Payne Decl. ¶ 16.)  Of course, Rock Vault has no confirmable information regarding when Payne began selling tickets because this information is solely within the possession of Payne and discovery has yet to commence.  Rock Vault also has no information regarding whether Payne used the same advertisement in other mediums (*i.e.*, print, television, radio, other websites).  Accordingly, summary judgment would be premature.

However, assuming for the purposes of argument only, that tickets for The Rock Pack went on sale one day before the advertisement was removed, Payne's argument is a red herring.  The crux of Payne's argument is that because the advertisement was removed, ticket purchasers for The Rock Pack did not see the advertisement and, therefore, the advertisement could not have affected their decision to purchase tickets, resulting in no damages to Rock Vault.  *See, e.g.*, *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995) (after bench trial, holding plaintiff did not show "the false statement about litigation caused the damage by influencing pharmacists to forego purchasing Food Plus").  But Payne ignores that fact that persons who purchased tickets could have seen Payne's advertisement ***before*** it was removed and decided to purchase tickets when they went on sale.  Payne has not submitted any evidence that customers who purchased The Rock Pack tickets ***only*** relied on advertisements that existed ***after*** the advertisement was removed.  Nor is there any evidence that no ticket purchaser viewed the misleading advertisement.  At the very least, Rock Vault is entitled to discovery regarding when Rock Pack tickets went on sale, other advertisements, the identities of the customers who purchased the tickets, and any other advertisements for the show that were used.

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

6880916_1



For instance, Rock Vault seeks discovery into: (1) the facts surrounding the creation of the show, (2) whether any scripts or rehearsal videos exist, (3) whether the show's content has changed during production, (4) documents regarding Plaintiff's Raiding the Rock Vault show, (5) documents discussing how to differentiate the parties' shows, and (6) any advertisements for The Rock Pack show that mention or reference the Raiding the Rock Vault show.  Fountain Decl. ¶ 11. Accordingly, summary judgment as to Counts III and IV should be denied.

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

6880916_1



6880916_1



## V. ROCK VAULT PLED FRAUD (COUNT VII) WITH SUFFICIENT PARTICULARITY

Payne argues that Rock Vault failed to plead fraud with sufficient particularity as required under Federal Rule of Civil Procedure 9(b). (Mot. to Dismiss at 19, ln. 23 to 20, ln. 26.) Specifically, Payne claims that Rock Vault did not allege the "time, place, and content" of the false statements or explain why the statements were false. (*Id.*)

Payne is incorrect.



-22-

6880916_1



## VI.   ROCK VAULT SHOULD BE GRANTED LEAVE TO AMEND

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).  If, despite the foregoing, the Court is nevertheless inclined to dismiss one or more Counts of Rock Vault's Complaint, Rock Vault respectfully requests that it be granted leave to amend.

### CONCLUSION

For the foregoing reasons, Payne's Motion to Dismiss should be denied.

Dated: this 19th day of November, 2015.

LEWIS ROCA ROTHGERBER LLP


/s/ Jonathan W. Fountain
Michael J. McCue (NV Bar No. 6055)
MMcCue@LRRLaw.com
Jonathan W. Fountain (NV Bar No. 10351)
JFountain@LRRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169-5996
Tel: (702) 949-8200
Fax: (702) 949-8398

*Attorneys for Plaintiff*
*Rock Vault Tours, Inc.*

6880916_1

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2015, I caused a true and accurate copy of the foregoing document entitled, **OPPOSITION TO DEFENDANT JOHN PAYNE'S MOTION TO DISMISS FOR LACK OF STANDING AND PURSUANT TO FRCP 12(B)(6), OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**, to be filed with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notice of the same to the following CM/ECF participants:

> Kimberly P. Stein
> kstein@nevadafirm.com
> Sarah T. Bassett
> sbassett@nevadafirm.com
> HOLLEY DRIGGS WALCH
> FINE WRAY PUZEY & THOMPSON
> 400 South Fourth Street, Third Floor
> Las Vegas, NV 89101

Dated: this 19th day of November, 2015.

/s/ Rebecca J. Contla
An employee of Lewis Roca Rothgerber

6880916_1